UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **CICAS IP LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**Stryker Corporation,**<br><br>Defendant. | Case No. 2:23-cv-295<br><br>**JURY TRIAL DEMANDED** |

### ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

CICAS IP LLC ("Plaintiff") hereby files this Original Complaint for Patent Infringement against Stryker Corporation ("Stryker" or "Defendant"), and alleges, upon information and belief, as follows:

### THE PARTIES

1. CICAS IP LLC is a limited liability company organized and existing under the laws of the State of Wyoming with its principal place of business at 30 N Gould St, Suite R, Sheridan, WY 82801.

2. Upon information and belief, Defendant is a company organized and existing under the laws of the State of Michigan, and as shown below, with a place of business at 818 S. Fleishel Ave Tyler, Texas 75701. Upon information and belief, Defendant can be served with process upon CT Corporation located at 1999 Bryan St. Ste. 900 Dallas, TX 75201-3140.



**Image of sign for Stryker office location at 818 S. Fleishel Ave Tyler, Texas 75701.**

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Defendant. Defendant has continuous and systematic business contacts with the State of Texas. Defendant transacts business within this District and elsewhere in the State of Texas. Further, this Court has personal jurisdiction over Defendant based on its commission of one or more acts of infringement of patent-in-suit in this District and elsewhere in the State of Texas.

5. Upon information and belief, Defendant transacts substantial business in the State of Texas and this Judicial District. Defendant has committed acts of infringement in this District by, among other things, offering to sell and selling products that infringe the asserted patents, including the accused products as alleged herein, as well as providing service and support to its customers in

this District.  Upon information and belief, Defendant, directly or indirectly, participates in the stream of commerce that results in products, including the accused products, being made, used, offered for sale, and/or sold in the State of Texas and/or imported into the United States to the State of Texas.

6. Upon information and belief, not only does Defendant maintain physical brick-and-mortar business locations in the State of Texas and within this District, but Defendant also retains employees specifically in this District for the purpose of servicing customers in this District (as shown below), and generates substantial revenues from its business activities in this District.

**Screenshot of Defendant's webpage showing a position open at its location in Tyler, Texas, located at** https://careers.stryker.com/job/18029358/upper-extremities-sales-representative-texas-louisiana-remote/.

7. Defendant solicits sales and infrastructure employees to cover this District and that those employees live in this District. Defendant's presence in this District is important to the business performed and Defendant has all intentions to maintain employee presence in the event any employees decide to terminate their residences in this District.

8. Defendant's employees in this District possess Defendant's business software, product, inventory and/or literature in this District. Defendant's employees not only possess the business software, product, inventory and/or literature — their use in this District is part of each employee's job description.

9. Venue is proper in this District as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b). As noted above, Defendant maintains a regular and established business presence in this District. *See In re Monolithic Power Systems, Inc.*, 2022 WL 4587861, at *2 (C.A.Fed. (Tex.), 2022).

## BACKGROUND AND PATENTS-IN-SUIT

10. Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent Nos. 6,850,794 ("the '794 Patent") titled "Endoscopic Targeting Method and System" relating to image-guided surgery, and in particular, to an endoscopic targeting method and system.

11. By operation of law, the '794 Patent was originally issued and exclusively vested to the named inventor, Ramin Shahidi, as of the issue date of the '794 Patent. *See* 35 U.S.C. § 261; *Schwendimann v. Arkwright Advanced Coating, Inc.,* 959 F.3d 1065, 1072 (Fed. Cir. 2020); *Suppes v. Katti,* 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc.,* 565 Fed. Appx. 888, 889 (Fed. Cir. 2014). The inventors, in a written instrument dated November 6, 2001, and filed with the United States Patent and Trademark Office on January 23, 2002, assigned all rights, title, and interest in the '794 Patent to Stanford University.

12. Stanford University, in a written instrument dated October 31, 2007, and filed with the United States Patent and Trademark Office, assigned all rights, title, and interest in the '794 Patent back to Ramin Shahidi.

13. Ramin Shahidi, in a written instrument dated April 8, 2010, and filed with the United States Patent and Trademark Office on April 13, 2010, then assigned all rights, title, and interest in the '794 Patent to California Institute of Computer Assisted Surgery, Inc.

14. Thereafter, in a written instrument California Institute of Computer Assisted Surgery, Inc. assigned all rights, title, and interest in the '794 Patent to the Plaintiff. As such, Plaintiff has sole and exclusive standing to assert the '794 Patent and to bring these causes of action.

15. The '794 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

16. The inventions described and claimed in the '794 Patent were invented individually and independently by Ramin Shahidi.

17. The '794 Patent includes numerous claims defining distinct inventions. As represented in Fig. Fig. 1 of the '794 Patent below, the inventions generally relate to image-guided surgery, and in particular, to an endoscopic targeting method and system.



Fig. 1

18. The priority date of each of the '794 Patent is at least as early as September 23, 2000.  As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

19. Before the inventions of the '794 Patent, endoscopic surgical tools were used in a variety of surgical procedures. Typically, such tools included an optical system for visualizing patient structure at or near a target site, and a surgical tool for carrying out desired operations at the site, e.g., removal of tissue for biopsy, surgical removal of necrotic or tumorous tissue, surgical repair of tissue structure, etc. *See* '794 Patent, Col. 1, ll. 1-21.

20. Therefore, in an endoscope-guided operation, the surgeon would be required to know in which direction, and what distance to advance the tool in order to optimally access the target site. Since an endoscopic tool can only view surface structure, the surgeon would often have difficulty in locating and/or accessing a target site, which is likely to be hidden from endoscopic view. *Id.*, Col. 1, ll. 23-9.

21. The inventor of the '794 Patent conceived new an endoscopic targeting method and system to assist a surgeon in performing an endoscopic surgical procedure or endoscopic examination of a patient. *Id.*, Col. 1, ll. 30-3.

22. To do so, the '794 Patent includes, in one aspect, a system for enhancing the ability of a surgeon to access a target site within a patient. The system includes a data file containing volumetric scan data of a region of the patient that includes the target site, a display device, a movable imagining tool for producing on the display device, an image of visible patient structure seen by the tool, where the position of the tool is tracked relative to the position of the patient, and a computer operatively connected to data file, display screen, and tracking device. *Id.*, Col. 1, ll. 36-45.

23. Then, the computer operates to (i) determine the position and/or orientation of the tool in the frame of reference of the patient, (ii) identify the scan-data coordinates (either x,y or x,y,z coordinates) of the target site, and (iii) project on the video image on the display device, indicia that indicate the lateral position of the target site with respect to the patient structure imaged on the display device. *Id.*, Col. 1, ll. 46-52.

24. The '794 Patent is a pioneering patent and has been cited as relevant prior art in 134 subsequent United States Patent Applications, including Applications Assigned to Defendant and such technology leaders and academia as Intuitive Surgical Operations, Inc., Veran Medical Technologies, Inc., Veran Corporation, Boston Scientific Scimed, Inc. and Covidien.

25. The claims of the '794 Patent were all properly issued and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.' Much to the contrary, a patent does have value beyond its expiration date. For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

## DEFENDANT'S INFRINGING PRODUCTS

26. Upon information and belief, Defendant makes, sells, advertises, offers for sale, uses, or otherwise provides endoscopic targeting methods and systems, including, but not limited to, the Scopsis ENT Navigation System ("Accused Instrumentalities"), that utilize the '794 Patent's patented endoscopic targeting methods and systems. On information and belief, these endoscopic targeting systems and methods include (a) a data file containing volumetric scan data, (b) a

display, (c) a movable imaging tool, (d) a computer connected to the data file and display, and (e) indicia that indicate the direction and position of target site, as invented in the '794 Patent.

27. As shown in more detail below, Defendant's products include each and every limitation of at least, but not limited to, claim 1 of the '794 Patent and therefore literally infringe these claims. Plaintiff reserves the right to assert additional claims and to assert infringement under the doctrine of equivalents in light of information learned during discovery or in view of this Court's claim construction order.

28. Images of Defendant's endoscopic targeting products are shown below. Defendant's endoscopic targeting systems products include the require:

- a data file containing volumetric scan data;
- a display;
- a movable imaging tool for producing on the display device, an image of visible structure seen by the tool, where the position and/or orientation of the tool is tracked with respect to the patient coordinate system;
- a computer connected to the data file and display, for (i) determining the position and/or orientation of the tool in a patient coordinate system, (ii) identifying the scan-data coordinates of the target site in the patient coordinate system, and (iii) projecting on the video image on the display device; and
- indicia that indicate (a) the direction of the target site, if the target site is outside the patient structure imaged on the display device, and (b) the lateral position of the target site with respect to the patient structure imaged on the display device and the distance between the tool and the target site, if the target site is within the patient structure imaged on the display device.

29. For example, the Scopis ENT Navigation System is shown below from its website promoting the Accused Instrumentalities:

> Scopis is a next-generation solution for navigating functional endoscopic sinus surgery (FESS) offering surgeons highly advanced image guidance and visualization capabilities in a single system. Stryker ENT navigation system powered by Scopis software allows the analysis and identification of sinus cells in the complex patient anatomy and planning of the natural drainage pathways through the sinus cavity. During surgery, the planned pathways are overlaid in real-time onto the endoscopic image, providing you with unique Scopis augmented reality technology. Guidance of endoscopic instruments may help you to perform a minimally invasive, accurate and selective surgery.

**Description of Accused Instrumentalities as found on Defendant's webpage at https://www.stryker.com/us/en/ent/products/stryker-ent-navigation-system.html.**



**Image of Accused Instrumentalities as found on Defendant's webpage at**
https://neurosurgical.stryker.com/wp-content/uploads/2018/02/Scopis-Product-Catalog.pdf.

## COUNT I
## Infringement of U.S. Patent No. 6,850,794

30. Plaintiff incorporates the above paragraphs by reference.

31. Defendant without authority, continues to make, use, sell, offer to sell, and/or import into the United States its Accused Instrumentalities as shown above.

32. Defendant thus has infringed and continues to infringe at least claim 1 of the '794 Patent literally and/or under the doctrine of equivalents.

33. Defendant has also actively induced and will continue to actively induce the infringement of at least one of claim 1 of the '794 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as creating and/or distributing videos of use such as the videos above, brochures, manuals, instructional documents, and/or similar materials with instructions on creating, manufacturing, designing, assembling and/or implementing infringing products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '794 Patent, without license or authority from Plaintiff. On information and belief, Defendant knows that the induced acts constitute infringement of the '794 Patent.

34. Defendant individually, collectively, or through others or intermediaries, has contributorily infringed, and/or is contributorily infringing, in violation of 35 U.S.C. § 271(c), at least one claim of the '794 Patent by making, using, offering for sale, selling, and/or importing, material parts of the inventions claimed in the '794 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '794 claims.

35. Defendant has been on actual notice of the '794 Patent at least as early as 2013, as shown below, as it was cited it in Defendant's own patent file histories including U.S. Patent No. 10,667,868B2. Defendant's direct and indirect infringement of the '794 Patent has thus been committed with knowledge of the '794 Patent, making Defendant liable for direct, indirect, and willful infringement.

| | | | | |
|---|---|---|---|---|
| US10667868B2 | 2015-12-31 | 2020-06-02 | **Stryker** Corporation | System and methods for performing surgery on a patient at a target site defined by a virtual object |
| US10706610B2 | 2011-06-28 | 2020-07-07 | Scopis Gmbh | Method for displaying an object |

**Screenshot of Google Patent results for Cited By of the '794 Patent showing Defendant's own citation for its U.S. Patent No. 10,667,868.**

36. Defendant's infringement of the '794 Patent will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless it is enjoined by this Court.

37. Plaintiff has been damaged because of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

38. Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Defendant as follows:

1. Declaring that Defendant has infringed the '794 Patent;
2. Awarding Plaintiff its damages suffered because of Defendant's infringement of the '794 Patent;

3. Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest;

4. An award to Plaintiff of enhanced damages, up to and including trebling of Plaintiff's damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of the '794 Patent;

5. Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendants from further acts of infringement with respect to the '794 Patent;

6. Awarding Plaintiff ongoing post-trial royalties for infringement of the non-expired '794 Patent; and

7. Granting Plaintiff such further relief as the Court finds appropriate.

## JURY DEMAND

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

Respectfully Submitted

*/s/ Christopher A. Honea*
M. Scott Fuller
   Texas Bar No. 24036607
   sfuller@ghiplaw.com
Randall Garteiser
   Texas Bar No. 24038912
   rgarteiser@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420

**ATTORNEYS FOR PLAINTIFF**